UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**VICTORIA B. o/b/o A.C.B,**

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:20-cv-01764-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on October 14, 2020, denied an application for supplemental security income filed by Plaintiff on behalf of her minor child.  Plaintiff has now moved for judgment on the pleadings (Doc. 9) and the Commissioner has filed a similar motion (Doc. 10).  For the following reasons, the Court will the Court will **GRANT** Plaintiff's motion, **DENY** the Commissioner's motion, and **REMAND** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

### I. BACKGROUND

    The current application for SSI was filed by Plaintiff, the child's mother, on October 30, 2017.  After initial administrative denials of that claim, a hearing was held before an Administrative Law Judge on February 10, 2020.  Plaintiff was the only witness at the hearing.

    The Administrative Law Judge issued an unfavorable decision on March 4, 2020.  She first found that the child, who was born on January 9, 2010, was a school-age chid when the application was filed and had not engaged in substantial gainful activity since that date.  Next, the ALJ concluded that the child suffered from severe impairments including ADHD, a learning disorder, an unspecified bipolar disorder, an unspecified anxiety disorder, oppositional defiant disorder, and primary generalized epilepsy/complex partial seizures.  However, the ALJ determined that these impairments, taken singly or in combination, did not meet the criteria for disability under the Listing of Impairments.

    Moving forward with the sequential evaluation process, the ALJ then evaluated these impairments under the six areas (or domains of functioning) applicable to a child's application for benefits, which include acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for oneself,

and health and physical well-being.  The ALJ found only one marked impairment in these domains, that being in the domain of attending to and completing tasks, and concluded that her impairment in the remaining domains was less than marked.  Because a finding of at least two marked limitations or one extreme limitation is necessary in order to grant a child's application for benefits, the ALJ found that the child was not disabled within the meaning of the Social Security Act.

Plaintiff, in her motion for judgment on the pleadings, raises three claims of error.  First, she asserts that the ALJ did not set forth an analysis of the Listing of Impairments or the six domains of functioning that was specific enough to permit judicial review.  Second, she argues that the ALJ's decision is not based on substantial evidence.  Third, she claims that the ALJ's credibility analysis is flawed.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

The Court begins its review of the evidence by summarizing the testimony given at the administrative hearing.

Plaintiff first testified that she was the child's mother and that her child was ten years old and in the fourth grade.  She was in special education classes consisting of eight students, one teacher, and one aide, and had an IEP.  Plaintiff described her daughter as very hyper and also very sensitive to large groups.  She was aggressive toward other children as well as toward herself and toward animals.  The behaviors became more severe as her medication wore off during the day.  Her mother said that she would isolate herself when around groups of people, even ones with whom she was familiar.

The child's treatment consisted of multiple medications, all at the maximum dose for someone her age, and counseling at school.  The child suffered from severe anxiety as well, including testing anxiety.  She did not have friends at school and did not get along with her siblings.  She did not sleep well and did not do household chores like cleaning her room.  She also needed help with personal care.  Her mother described frequent temper tantrums and said that the child needed instructions repeated constantly.  She did not either initiate or complete tasks and appeared not to understand them.  She also needed redirection and was easily distracted.  It was difficult for the child to ride public transportation and she reacted negatively to sounds like music playing in a store, so her mother was reluctant to take her places.  She used noise canceling headphones at school to help minimize distractions.  Plaintiff told the ALJ that the child had the normal type of disagreements with one of her brothers but would slap or punch the other for no reason at all.

### B.  Documentary Evidence

The documentary evidence consists of both educational records and medical records.

The Court will begin its summary of this evidence with the former.

The child's first, second, third, and fourth grade teachers all completed questionnaires. In first grade, the child was performing academically at grade level but engaged in certain behaviors like talking to herself and throwing temper tantrums. She also did not get along well with others. The second grade evaluation did not indicate any obvious, serious, or very serious problems with her school performance, and noted that she was able to work well with minimal adult supervision, at least when she was on her medication. The child's third grade teacher did identify some obvious problems including reading below grade level and difficulty producing written material, needing constant prompting and redirection, shouting in class, difficulty relating to others, and avoiding distractions. No serious or very serious problems were identified, however. By the fourth grade, the child was performing at or slightly below grade level and had some serious attention problems. Whether she was on her medication made a big difference in her ability to attend to tasks. In each of these years, she had an IEP which placed her in an 8-1-1 class and provided for additional accommodations, especially during testing.

Medically, the child had been diagnosed with oppositional defiant disorder and ADHD and was started on medications when she was very young. A psychological evaluation done when the child was five years old. At that evaluation, she was described as cooperative but active and impulsive and needing a good deal of support and encouragement. Her cognitive functioning was in the high average range but it was determined that she would benefit from a smaller, structured classroom setting as well as counseling.

The child underwent a pediatric physical examination on January 2, 2018, when she was seven. It was noted that her behavior and attention span were below age level but she did not have any physical limitations. A child psychiatric evaluation done the same day reported that the child was seeing both a doctor and a counselor for mental health issues and that she had issues sleeping and with maladaptive behavior. Her attention and concentration were problematic as well and she did not follow through with instructions or complete assignments. Anxiety and mood swings were also described as part of her history. On examination, she was hyperactive and loud and ran around the office. Her affect was manic and her insight and judgment were both poor. Her mother apparently reported that her daughter could not take care of her personal needs independently or assist with household chores. The examiner, Dr. Schaich, concluded that the child had a number of moderate mental limitations in the areas of peer and adult interaction, dealing with instructions, sustaining concentration, and completing tasks.

The child's medical treatment records show that she was consistently treated for ADHD and anxiety disorder with medications, and that the medications did help to control her symptoms although they tended to wear off during the day. She did have a seizure disorder but it was also well controlled with medication. There are a large number of notes from a counseling service as well, but they do not add significant information to the Court's review.

A state agency reviewer, Dr. Stouter, evaluated the medical and school records on file as of January, 2018, and concluded that the child had a marked limitation in the domain of

attending and completing tasks, no limitation in the domain of acquiring and using information, and a less than marked limitation in the remaining four domains.

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

### IV.  DISCUSSION

This Court has explained, in past decisions, the regulatory framework under which a child's disability claim is judged.  As stated in *Will o/b/o C.M.K. v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 419, 422–23 (W.D.N.Y. 2019),

> To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). An ALJ follows a three-step sequential evaluation to determine whether a child is entitled

to SSI benefits. *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009). "First, the child must not be engaged in 'substantial gainful activity.' Second, the child 'must have a medically determinable impairment(s)' that is 'severe' in that it causes 'more than minimal functional limitations.' Third, the child's impairment or combination of impairments must medically or functionally equal an impairment listed in an appendix to the regulations." *Id*. (quoting 20 C.F.R. § 416.924).

> The limitations caused by a child's severe impairment are evaluated pursuant to six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself, and (6) health and physical well-being. See 20 C.F.R. § 416.926a(b)(1). "For a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.' " *Encarnacion*, 568 F.3d at 75 (quoting 20 C.F.R. § 416.926a(a) ). "A marked limitation is more than moderate but less than extreme and interferes seriously with a child's ability to independently initiate, sustain, or complete activities. An extreme limitation is more than marked and interferes very seriously with a child's ability to independently initiate, sustain, or complete activities." *Id*. (internal quotations and citations omitted).

Because the ALJ's reasoning process and the evidence on which she relied are the focus of Plaintiff's arguments, the Court will summarize the key aspects of the ALJ's decision.

The ALJ first considered whether the child's severe impairments met or medically equaled the criteria for disability under the Listing of Impairments, including sections 112.04, 112.06, 112.08, and 112.11, all of which deal with mental impairments. Those sections all require a claimant to satisfy the "B" criteria, which address mental functioning in four areas. As the introduction to Section 112 explains,

> Paragraph B of each listing (except 112.05) provides the functional criteria we assess to evaluate how your mental disorder limits your functioning. For children ages 3 to 18, these criteria represent the areas of mental functioning a child uses to perform age-appropriate activities. They are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.

To satisfy these criteria, a child must have an extreme limitation in at least one of these four areas or a marked limitation in at least two. There is also a set of "C" criteria which apply to Sections 112.02, 112.03, 112.04, 112.06, and 112.15, and which are met when a claimant has a serious and persistent mental disorder (defined as one which has been medically documented over a period of two years) and there is evidence of both

    1.  Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 112.00G2b); and

    2.  Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 112.00G2c).

The ALJ said that the child's impairments did not meet or equal any of the pertinent sections of the Listing because, as to the "B" criteria, "[f]or reasons discussed in the next step of the sequential evaluation process, because the evidence does not support the claimant's mental impairments cause at least one 'extreme' or two 'marked' limitations, the 'paragraph B' criteria are not satisfied." (Tr. 17). With respect to the "C" criteria, the ALJ stated that "I have also considered and found that the evidence fails to satisfy the 'paragraph C' criterial of listings 112.04 and 112.06." *Id*. The ALJ elaborated that there was no evidence that the child had only marginal adjustment to changes in her environment. *Id*.

The ALJ then proceeded to the next step of the sequential evaluation process, which requires findings as to the six domains of functioning set out in 20 C.F.R. § 416.926a(b)(1). She recited that she had considered all of the evidence and, in particular, found Plaintiff's testimony and written description of her daughter's symptoms not to be entirely consistent with the medical and other evidence. (Tr. 19). She then considered each of the six areas of functioning separately, reviewing the evidence - including the multiple evaluations done by the child's teachers, evidence from Plaintiff, and the consultative examination results - and explained why she reached her conclusions, which are set out above. The ALJ noted that she found the teacher questionnaires persuasive because teachers are both acceptable sources when comparing students' performances and because their responses were consistent with the other evidence of record, and she concluded that the consultative examiner's opinions understated the degree to which the child was impaired. (Tr. 19-23).

In her first claim of error, Plaintiff takes issue with the way in which the ALJ analyzed the question of whether the child's impairments met or equaled the Listing of Impairments. More specifically, she asserts that although the four "B" criteria and the six domains of functioning involve similar analyses, they are not the same. She cites to various decisions from this Court in support of her argument that it is error for an ALJ to rely on the "six domain" analysis as the complete answer to why a claimant's impairments do not literally meet the requirements of the Listing of Impairments. In response, the Commissioner contends that Plaintiff waived this argument because she did not present this to the ALJ as a "medical equivalence" case, and that if she did not waive the argument, the ALJ's decision as a whole adequately addressed the issue.

First, the Court does not find a waiver here. The Commissioner has cited no cases involving these circumstances where a claimant has waived a determination of whether she meets or medically equal a section of the Listing of Impairments. The statements upon which

the Commissioner relies in support of the waiver argument are not unequivocal.  Further, the ALJ did not enforce a waiver but specifically considered the question of whether the Listing had been met or equaled.  Under these circumstances, the ALJ's decision on that issue is subject to review by this Court.

Turning to the merits, Plaintiff has cited to decisions from this Court which appear to disapprove of the approach taken by the ALJ here - namely, conflating the questions of whether an impairment satisfies the "B" criteria and how it can be categorized under the six pertinent domains of functioning.  One of those cases, *Lanique Q.R. o.b.o. R.L.R. v. Comm'r of Soc. Sec.*, 2021 WL 1226472 (W.D.N.Y. March 31, 2021), is not really apposite.  There, the "B" criteria were not specifically the issue; rather, it was whether the claimant's IQ score met one of the requirements of section 112.05(a) the Listing (*i.e.* a valid IQ score of 70 or less), which is clearly not a question that could be answered by the six domain analysis.  The second case is more on point.  There, the ALJ apparently analyzed the claimant's functioning in the six domains but did not specifically do so under the "B" criteria.  This Court said that "[w]hile there may be some overlap between the subject matter of the six domains covering functional equivalence and the requirements of the second prong of 112.05(B), the ALJ's consideration of whether [the claimant's] impairments functionally equal the listing is not the same as considering whether those impairments literally meet the explicit provisions of 112.05(B)(2)."  *Gonzalez o/b/o J.A.M. v. Saul*, 2019 WL 3891021, at *5 (W.D.N.Y. Aug. 19, 2019).  This Court acknowledged that the Commissioner had made a harmless error argument but rejected that argument, reasoning that "even if the ALJ's discussion of functional equivalence did enable the Court to glean how the ALJ would have treated the second prong, that still would not demonstrate how or whether the ALJ considered [the claimant's] May 2016 verbal score."

There is considerable divergence in the case law on this issue.  For example, the Tenth Circuit Court of Appeals held (albeit in an unpublished decision) that an analysis of the six domains of functioning is not a substitute for a separate analysis of the "B" criteria.  *See Huffman v. Astrue*, 290 Fed.Appx. 87, 89 (10th Cir. July 11, 2008)("To be sure, the categories are similar; however, the Commissioner's rules for determining childhood disability claims explain that the six 'domains are specifically designed for determining functional equivalence and are completely delinked from the mental disorders and other listings.' 65 Fed.Reg. 54746, 54755 (Sept. 11, 2000)").  District courts within the Tenth Circuit have, for the most part, followed *Huffman*.  *See, e.g., Kaytie B. v. Kajakazi*, 2022 WL 4260463 (D. Utah. Sept. 15, 2022); *but see Johnson ex rel. J.K.J. v. Colvin*, 2013 WL 3216064 (N.D. Okla. June 24, 2013).  Other district courts have either specifically rejected *Huffman - see,e.g., Picott ex rel. D.P. v. Colvin*, 2014 WL 222095 (M.D.N.C. Jan. 21, 2014) - or applied a harmless error analysis that is fundamentally inconsistent with *Huffman's* rationale.  *See, e.g., Wood o.b.o. B.W. v. Colvin*, 2021 WL 4078651 (E.D. Mich. Sept. 8, 2021).  The *Wood* decision appears to invite reviewing courts in this situation to speculate as to "how [the ALJ] would have evaluated the record to reach the conclusions that she did" even though the ALJ did not articulate her rationale for determining that the "B" criteria were not satisfied.  *See id.* at *5.

There are several reasons why this Court cannot adopt this latter mode of analysis.  First,

the Commissioner has not specifically advanced a harmless error analysis.  Second, it is generally the case that a reviewing court cannot accept a *post hoc* rationalization to justify agency action.  *See Newbury v. Astrue*, 321 Fed.Appx. 16 (2d Cir. March 26, 2009).  Third, this Court and other courts have consistently recognized that there are differences between the four "B" criteria and the six domains of functioning; if it were otherwise, there would be no reason to have set them forth as distinct ways in which a claimant may prove disability.  There is significant value in requiring an ALJ to treat these pathways separately and to provide a separate analysis which the Court can review for legal error and under the substantial evidence standard.  For these reasons, the Court will remand the case for further proceedings.

Notwithstanding this determination, the Court will briefly address Plaintiff's other two claims of error.  There does appear to be a plethora of evidence supporting the ALJ's decision as to the six domains of functioning, including the ones which Plaintiff challenges.  The ALJ devoted a large portion of her decision to the evaluation of this evidence, and the decision is consistent with all of the teacher evaluations and more favorable to the child than the consultative opinion.  However, Plaintiff is correct that the ALJ made only a very conclusory observation with respect to the consistency of her testimony with the balance of the record, and a remand will permit the ALJ to expand upon her reasoning in this area.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for judgment on the pleadings (Doc. 9), **DENIES** the Commissioner's motion (Doc. 10), and **REMANDS** the case to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four. Commissioner.

                                            **/s/ Terence P. Kemp**
                                            **United States Magistrate Judge**